

# THE ATTORNEY GENERAL
## OF TEXAS

JIM MATTOX
ATTORNEY GENERAL

July 27, 1990

Mr. Larry E. Kosta
Executive Director
Department of Licensing
    and Regulation
P. O. Box 12157
Austin, Texas 78711

Opinion No. JM-1195

Re: Authority of a municipal-
ity to impose a registration
fee, license fee, occupation
tax, or a bond requirement
on a state licensed air con-
ditioning and refrigeration
contractor    (RQ-1993)

Dear Mr. Kosta:

You ask whether an air conditioning and refrigeration
contractor licensed by the Department of Licensing and Regu-
lation pursuant to article 8861, V.T.C.S., may be required
by a municipality to pay a local registration fee, license
tax, occupation tax, or to file a bond with the municipal-
ity.

Article 8861 provides for a broad scheme of regulation
of air conditioning and refrigeration contractors by the
Texas Department of Licensing and Regulation. See V.T.C.S.
art. 8861, §§ 3(a) (commissioner of department shall adopt
by rule standards for practice of air conditioning and re-
frigeration contracting, and may adopt rules for enforcement
of act), 3(f) (commissioner shall set insurance requirements
for licensees), 4 (requirements for licensure by department,
including examinations), 5 (denial, suspension, or revoca-
tion of licenses), 5A (consumer complaint investigation by
commissioner).

You point to section 9(a) of that article, which pro-
vides:

A license issued by a municipality of this
state is valid under the terms of the license
within that municipality. However, <u>a license
under this Act is valid throughout the state,
and the holder and people under supervision
are not required to hold a municipal license
to practice air conditioning and refrigera-
tion contracting in any municipality within
this state.</u> (Emphasis added.)

With respect to the municipal "license tax" you ask about, the above-quoted provision of section 9(a) of article 8861, in itself, precludes a municipality from imposing a municipal "license tax" on a state licensee.

The municipal "occupation tax" you ask about would, we think, be invalid as contravening the provisions of article VIII, section 1, of the state constitution. That section has been construed to prohibit municipal imposition of an "occupation tax" on pursuits on which the state levies no occupation tax. See Ex parte Dreibelbis, 109 S.W.2d 476 (Tex. Crim. App. 1937). We find no provision of state law for imposition of a state occupation tax on air conditioning and refrigeration contractors. Therefore a municipality may not impose such a tax.

With regard to whether a municipality may require an air conditioning and refrigeration contractor licensed under article 8861 to file a "bond" with the municipality, we think that by virtue of section 3(f) of the article, the state has occupied the field of regulation of such persons and, therefore, such a municipal requirement is preempted.

Generally, municipalities are prohibited from entering a field of legislation occupied by general legislative enactments. Where a field of legislation has been occupied by a state statute, specific grants of authority to municipalities to enact ordinances in such field should be considered as implicitly limiting municipal authority to that specifically conferred by statute. See V.T.C.S. art. 8861, §§ 6(b) (persons not covered by article 8861 remain subject to permit, inspection, or approval requirements prescribed by municipal ordinance), 7 (article 8861 licensee must notify municipality in which he is engaged in air conditioning and refrigeration contracting, the notification to be "in the form required by the municipality"), 9(b) (municipalities may by ordinance adopt and enforce standards for air conditioning and refrigeration contractors that are consistent with the standards established under the article); see also Prescott v City of Borger, 158 S.W.2d 578 (Tex. Civ. App. - Amarillo 1942, writ ref'd); Tex. Const. art. XI, § 5; 67 Tex. Jur. 3d Statutes § 119 (1989), and authorities cited there (expressio unius est exclusio alterius rule).[1]

---

1. The bill analysis to the 1983 act in which the provisions of article 8861 were first adopted stated as background for that legislation:

Some cities regulate air conditioning contractors and

(Footnote Continued)

Section 3(f) requires the commissioner of the Department of Licensing and Regulation to set insurance requirements for persons licensed under article 8861. See also 16 T.A.C. § 75.6. We think that having provided for the regulation of article 8861 licensees' insurance coverage by the department, the legislature has in effect preempted municipal authority in the area of requiring licensees to insure against risks attendant on their operations. We assume that the bonds you say some municipalities require of article 8861 licensees are in the nature of such insurance.[2] In our opinion, municipalities lack authority to impose such bond requirements. See, e.g., Massachusetts Bonding & Ins. Co. v. McKay, 10 S.W.2d 770 (Tex. Civ. App. - Austin 1928, writ ref'd).[3]

As to whether a municipality may require a "registration fee" of an article 8861 licensee performing air conditioning and refrigeration contracting in the municipality, we think that the nature of a particular "registration fee"

_____

(Footnote Continued)
others do not regulate air conditioning contractors. Some air conditioning contractors need ten or twelve permits in order to operate their business and others do not need any permits to operate in their geographic area.

Bill Analysis, S.B. 642, 68th Leg. (1983).

We think it is clear that article 8861 was meant to relieve air conditioning and refrigeration contractors from compliance with regulations varying from jurisdiction to jurisdiction, by providing a scheme under which the obtaining of a state license would authorize such contractors to do business anywhere in the state.

2. Also, we assume that the bonds which you ask whether municipalities may require would be imposed by municipalities in their regulatory capacities. We do not here address the propriety of a municipality which has contracted with an article 8861 licensee for the performance of work for the municipality requiring a bond in connection with such contract.

3. While we did not address the preemption effect of article 8861 on municipal authority to impose the "license tax" or "occupation taxes" because we feel that issues as to the permissibility of such requirements are sufficiently disposed of on the grounds stated above, we think that general preemption considerations would also support the conclusions we reached as to the permissibility of such requirements.

might have a bearing on a resolution of the issue of its validity. The state's entry, in article 8861, into the field of regulation of air conditioning and refrigeration contracting, as discussed above with respect to insurance or bond requirements, would severely limit the authority of a municipality to additionally require a "registration fee." However, we think that determination of the permissibility of a particular fee would depend on factual questions as to the nature of the fee, which we have not been supplied in your request. See V.T.C.S. art. 8861, § 7 (article 8861 licensee to notify municipality where performing work under license that he has obtained license, the notification to be "in the form required by the municipality"); see also 16 T.A.C. § 75.9 (department rule regarding notification of municipality).

## S U M M A R Y

Municipalities may not impose additional local license taxes, occupation taxes, or requirements of filing a bond with the municipality on air conditioning and refrigeration contractors licensed under V.T.C.S. article 8861. Whether a municipality may impose a "registration fee" on such licensees would involve questions of fact as to the nature of the particular fee.

Very truly yours,

JIM MATTOX
Attorney General of Texas

MARY KELLER
First Assistant Attorney General

LOU MCCREARY
Executive Assistant Attorney General

JUDGE ZOLLIE STEAKLEY
Special Assistant Attorney General

RENEA HICKS
Special Assistant Attorney General

RICK GILPIN
Chairman, Opinion Committee

Prepared by William Walker
Assistant Attorney General